WILLIAM L. BEELER *et al.* Defendants in Error, *vs.* JAMES B. BARRINGER, Exr., Plaintiff in Error.

*Opinion filed December 21, 1911.*

1. WILLS—*right to elect a conversion or re-conversion does not depend upon right to present enjoyment.* The right of a devisee to elect a conversion or re-conversion of money into land or land into money is not dependent upon the devisee's right to the present enjoyment of the gift at the time the election is made.

2. SAME—*right to elect a re-conversion cannot defeat time for distribution.* The right of a devisee to elect to take the land instead of the proceeds of the sale thereof defeats the intention of the testator to distribute his estate in money, but it cannot defeat his intention as to the time for distribution, so as to give the beneficiaries the use and enjoyment of the gift at an earlier period than if no election had been made.

3. SAME—*when equity may direct a re-conversion.* Where a will devises the residue of the testator's property to the executor, with directions to convert the land and personalty into money and divide the proceeds among the testator's four children as they respectively become of age, a court of equity may direct a re-conversion so that the children will retain the land even though some of them are minors, if they all agree thereto and it appears to be for their best interests; but in such case the control and management of the land should be left in the hands of the executor, as trustee, until the time for distribution.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding.

AMOS MILLER, and D. R. KINDER, for plaintiff in error.

J. T. BULLINGTON, and LANE & COOPER, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a writ of error sued out to review a decree of the circuit court of Montgomery county for the re-conversion of personal property into real estate.

It appears from the allegations of the amended bill that Joseph Beeler died testate February 4, 1907. He left surviving him Frances E. Beeler, his widow, and William L. Beeler, Bertie E. Beeler, Della P. Beeler and Joseph E. Beeler, his only children and heirs-at-law. At the time of Joseph Beeler's death, besides a considerable amount of personal property, he owned a homestead in the city of Hillsboro whereon he resided with his family, and also two farms in Montgomery county,—one of 320 acres and the other of 97 acres. By the second paragraph of his will he gave his widow the homestead and $3000 in money in lieu of all interest she might otherwise have in his estate as his widow. By the third paragraph he gave his oldest son, William L. Beeler, $1000, to be paid to him on his arriving at the age of twenty-one years. By the fourth paragraph the testator devised the residue of his estate to James B. Barringer (whom he nominated in the will as executor) in trust, with directions to convert the personal estate into money as soon after the testator's death as could be done consistently with the best interests of the estate. The testator directed that the executor or trustee keep the farm of 320 acres rented until such time as in the judgment of said executor it could be sold for the best price, but the will directed that it be sold within three years after the

testator's death. The testator expressed a desire that the other farm should be kept so that his sons might have land to farm, but authorized its sale at such time as the executor might deem best. The will directed that the testator's property, and his personal estate, should be reduced to money, and after the payment of the legacies to his widow and oldest son it be divided into four equal parts, and one part paid to each of his four children as they arrived at the age of twenty-one years, respectively. The will further directed that the executor or trustee keep the proceeds of the sale invested in safe securities, at the best rate of interest obtainable, until the time for distribution. All four of the testator's children were complainants in the bill. Three of them, being minors, appeared by their guardian, L. V. Hill, who had been duly appointed by the probate court of Montgomery county and had qualified as such guardian. William L. Beeler, the oldest son, is an adult. Bertie E. Beeler was seventeen, Della P. Beeler thirteen and Joseph E. Beeler ten years of age at the time of the hearing in the circuit court. The bill, after describing the land and the purposes for which it was being used, alleged that it was for the best interest of all four of the children to have, own and enjoy the land, rather than the money that might arise from the sale by the executor; that all four of said children of the testator had signed a writing electing to take the land instead of the proceeds of its sale; that said writing was also signed by the guardian of the minor children; that it was under seal, acknowledged before a notary public and recorded in the office of the recorder of deeds; that the guardian had reported said election to the probate court and the same had been approved by said court. The bill further alleged that the executor threatened to and had given notice that he would sell the land at public sale on a day named, and prayed that he be enjoined from making such sale and that the court confirm the election of complainants to take the land or make the election for the

minors, if necessary, and that the executor be decreed to release, by quit-claim, all interest in said land as executor or trustee. A temporary injunction was granted, and after a hearing upon bill, answer and replication the court entered a decree in accordance with the prayer of the bill. The executor has sued out this writ of error to review that decree.

There is no controversy upon the proposition that under the will the defendants in error took no title to the land; that where land is devised and by the terms of the will is directed to be converted into money and the money distributed to the devisees and legatees, it is a devise of money and not of land. Neither is there any controversy that under such a devise, if the devisees are under no disability and all agree to do so, they may elect to take the land instead of the money. Plaintiff in error also concedes that a "court of equity may, if it appears to be to the advantage of an infant, direct a re-conversion in his behalf, if at the time of such re-conversion the infant is presently entitled to the fund." It is contended, however, that the right to elect a re-conversion only exists where the beneficiary, whether adult or minor, is entitled to the present enjoyment of the fund or property.

By the will of their father defendants in error would become entitled to the possession and use of the gift upon their respectively attaining the age of twenty-one years. But one of them had arrived at that age when the bill in this case was filed and the decree entered thereon, and the youngest was but ten years old. We do not think the right of a devisee to elect a conversion or re-conversion of money into land or land into money is dependent upon his right to the present enjoyment of the gift at the time the election is made. It is true, there is a dictum to the contrary in *Hetzel* v. *Barber,* 69 N. Y. 11, but the question was not involved in that case. In *Hale* v. *Hale,* 146 Ill. 227, and *Gorman* v. *Mullins,* 172 id. 349, a conversion of land

into money before certain beneficiaries were entitled to the enjoyment of the gift was sustained. In the *Hale case* the testator was a resident of the State of Massachusetts. He left a large estate, consisting of real and personal property. Some of his real estate was situated in the city of Chicago. Among other things, the will provided for the payment of life annuities of different amounts to a number of persons, relatives of the testator, and at the death of the last annuitant the residue of the estate, together with the accumulated interest, was to be equally divided among the testator's grandchildren. The executors and trustees under the will filed a bill to sell the land belonging to said estate situated in this State, and alleged that it was non-productive and was causing great expense in taxes and special assessments, and that it was to the best interest of all parties interested that it be converted into money for their benefit. Three of the parties interested in the distribution of the estate at the death of all the annuitants were minors and several of the annuitants were living at the time the bill was filed. The circuit court decreed a sale of the Illinois land. The case was brought to this court for review and the decree of the circuit court was affirmed. In the opinion the rule of conversion and re-conversion is elaborately discussed and many authorities cited and reviewed. Among other things the court said, on page 249: "The next question is whether the court below, sitting as a court of chancery, had the power to authorize the sale of the lands in question and the re-investment of the proceeds. Decisions are to be found in the English reports which hold that courts of equity have no power, by virtue of their general jurisdiction over minors, to order the sale of the minor's real estate for the purpose of education, maintenance or investment, and that is probably the prevailing doctrine in England. The same rule seems to have been adopted by some of the courts of this country. The principal reason for denying this jurisdiction in England appears to be, that by changing

the nature of the minor's estate from real to personal or from personal to real, the rights of third persons who will be entitled in case of the minor's death will be materially affected, as in that country real and personal property descend in different channels. That reason, it is very manifest, does not obtain in this country, as here both species of property go by descent or distribution to the same persons. The interference of the court, therefore, in sanctioning a conversion of the property from real to personal or from personal to real does not materially affect the rights of the persons who, in case of the minor's death, may become entitled to succeed to his estate. But even in England cases are to be found where the power to authorize a change in the nature of the estate of minors has been exercised and upheld, where such changes were manifestly for the minor's benefit. (See *Inwood* v. *Turner*, 1 Ambler, 417; *Earl of Winchelsea* v. *Norcliff*, 1 Vern. 434.) In this country, from an early day, courts of the highest respectability have refused to follow the English rule, and have held that where it is for the benefit of the minor, courts of equity have the power, by virtue of their general jurisdiction over the estates of minors and others under disability, to authorize a change from real to personal and from personal to real." In *Gorman* v. *Mullins, supra,* the devise was of real estate to the testator's sister, two full brothers and a half brother, to hold and rent and divide the annual net income equally among them until a nephew and niece of the testator arrived at the age of twenty-one, when the property was to be turned over to them. The half brother died and one of the other brothers released his interest in the property to his brother and sister before the nephew and niece became twenty-one years of age. The brother and sister, who were entitled to all the net income from the property, filed a bill alleging that the property was rapidly deteriorating in value; that it was of no rental value, and would continue to decrease until the nephew and niece

arrived at the age of twenty-one. The bill alleged it could be sold for a fair value for manufacturing purposes, and prayed that complainants be authorized to sell it and invest the proceeds in interest-bearing securities for their benefit and the benefit of the nephew and niece. The nephew and niece were made defendants to the bill. A decree was entered authorizing the sale of the property by the brother and sister of the testator and the investing of the proceeds until the nephew and niece arrived at the age of twenty-one, when the brother and sister were directed to turn over the proceeds of the sale, without interest, to the nephew and niece, in equal shares. The nephew and niece brought the case to this court by writ of error and this court affirmed the decree of the circuit court.

In both these cases, when the conversion occurred there were minors who were interested in the gifts when the time for distribution should arrive, but the time for the distribution and the enjoyment of the gifts by the minors had not arrived when the conversion was authorized. While in those cases there was a conversion of land into money, the law is equally applicable to a re-conversion of money into land. The principles are the same. There is this difference between the *Hale* and *Gorman cases* and the case at bar: In neither of those cases was the gift accelerated, and the minors for whose benefit, among others, the conversion was decreed did not go into the possession or enjoyment of the gift immediately upon the property becoming converted, while in this case the decree perpetually enjoins the executor from selling the land, and directs him to release to them, by quit-claim, all right or interest in its control or enjoyment.

We are of opinion there was no error in decreeing a re-conversion and enjoining the sale of the land, but that part of the decree directing the trustee and executor to release and turn the land over to the minors at once was erroneous. The duty was imposed by the will upon the trus-

tee of managing and controlling the property of the minors until they, respectively, arrived at the age of twenty-one years. Until the land was sold he was to manage and control the land, and when it was sold the proceeds were to be invested by him in safe securities at the best rate of interest obtainable, and kept so invested by him until the time fixed for distribution arrived. Re-conversion defeats the distribution of the testator's property in money, but the right of re-conversion does not carry with it the right to defeat the will of the testator that the possession and enjoyment of the property should be postponed until the beneficiaries, respectively, became twenty-one years old. Under the evidence the chancellor was justified in concluding that it was for the best interests of the minor defendants in error that they take the land instead of the proceeds of its sale, but the election to do so did not authorize a disregard of the will fixing the time at which the beneficiaries should come into its enjoyment. The control and management of the property of the minor defendants in error should be left in the trustee until the time fixed by the will for distribution.

The decree, therefore, for re-conversion and enjoining the sale of the land by the executor and trustee will be affirmed, but that part of said decree directing the executor and trustee to quit-claim and release the property to the beneficiaries will be reversed and the cause will be remanded to the circuit court, with directions to enter a decree in accordance with the views expressed in this opinion. The costs of this appeal will be taxed to the executor, to be paid in due course of administration.

*Affirmed in part, reversed in part and remanded.*